Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**KATHERINE A. HARMON**
**JARED S. SUNDAY**
Mallor Grodner LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**DOMINIC W. GLOVER, ESQ.**
Coriden Coriden Andrews & Glover, LLC
Columbus, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| B.O., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 55A04-1310-DR-484 |
| | ) | |
| D.O., | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MORGAN CIRCUIT COURT
The Honorable Matthew G. Hanson, Judge
Cause No. 55C01-0702-DR-100

**March 24, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

The marriage of B.O. ("Mother") and D.O. ("Father") was dissolved by the Morgan Circuit Court, and Father was awarded custody of the couple's two children, Ho.O. and Hu.O. Mother and Father agreed that Mother would have supervised parenting time with Hu.O., who was ten years old at the time of the agreed order.

Mother's parenting time with Ho.O., who was fifteen at the time, was suspended due to Ho.O.'s allegations of physical and sexual abuse by Mother. Mother subsequently filed a petition to modify her supervised parenting time to unsupervised parenting time or to parenting time supervised by Hu.O.'s maternal grandmother. The trial court denied Mother's petition. Mother now appeals, arguing that the trial court abused its discretion in denying her petition to modify parenting time.

We affirm.

## Facts and Procedural History

The trial court dissolved Mother and Father's marriage on September 29, 2008[1] and awarded custody of their two children, Ho.O. and Hu.O., to Father. After the parties' divorce, Ho.O., the older child, alleged that he was sexually and physically abused by Mother. Appellant's App. p. 15. On June 20, 2011, the parties entered into an Agreed Order suspending Mother's parenting time with Ho.O. and providing, in relevant part:

> 3. [Mother's] parenting time with [Hu.O.] shall also be modified and shall consist of supervised visitation which shall initially occur two times per month, to be scheduled by the parties, and shall initially be one (1) hour in length.

---

[1] The record is unclear as to when Mother and Father were married.

4. Said supervised visitation shall occur with Caroline Jessica Hersch, A.C.S.W., L.C.S.W., L.M.F.T., and shall take place at her office . . . or at any other location as directed by Ms. Hersch.

\* \* \*

7. [Mother] shall be responsible for the costs of said supervised visitation unless, through no fault of her own, [Father] fails to provide [Hu.O.] at said location for visitation. Both parties agree that any appointment cancellation must be done within 24 hours of said appointment unless a medical or weather emergency exists, pursuant to the attached Rules for Visitation.

Appellant's App. pp. 18-19.

Mother lives with her mother and sister, is unemployed, and receives $1,056.00 each month in disability assistance. She pays $400 each month to her mother for rent. After the trial court's entry of the parties' agreed order in June 2011, Mother consistently exercised her parenting time with Hu.O. at a cost of approximately $140 per month. At first, Mother visited with Hu.O. at the office of parenting time supervisor Caroline Jessica Hersch ("Hersch"), but eventually began to spend time with him at local restaurants or parks.

On February 25, 2013, approximately two years after the trial court's entry of the parties' agreed order, Mother filed a petition to modify her parenting time with Hu.O. to unsupervised parenting time. In her petition, Mother argued that she did not "believe conditions exist which require that her visits continue to remain supervised." Appellant's App. p. 24. Mother's petition requested that, should the court "wish to phase in unsupervised parenting time," Mother be permitted to "have a family member supervise the visits at no cost" or "[Father] be required to pay the costs for the visits." Id.

The trial court held a hearing on Mother's petition on September 9, 2013. At the hearing, Mother admitted that she had agreed that her parenting time with Hu.O. would

be supervised by Hersch and that Mother would be responsible for the costs associated with the parenting time. Mother also testified that she had previously abused pain medication, that she had sought counseling for drug and alcohol addiction, that there was occasional drug use in the home she shared with her mother and sister, and that the police had been called to her home because of a physical altercation between Mother's mother and sister.

Hersch testified that Hu.O. seemed to have grown more comfortable around his mother over the course of their visits together, but that he remains guarded about showing physical affection for his mother and that he felt uncomfortable when his mother told him that she loved him. She further testified that Hu.O. told Hersch that he would like to have visits with Mother at her home, "as long as they were supervised." Tr. p. 35.

On September 10, 2013, the trial court issued an order denying Mother's request to modify parenting time and providing, in relevant part:

8) [Father] does not wish for expanded visits.

9) [Mother] testified as to statements she made about her mother and sister getting into a fight in the home and that her sister had used marijuana in the past year in the home.

10) [Father] testified that he still has concerns about the maternal grandmother's home being used for visits and for her to be the supervisor since the incidents described by [Ho.O. regarding abuse] occurred in the same home and with the grandmother living there.

11) That the counselor testified that the visits between wife and [Hu.O.] were going well for the most part.

12) That the counselor testified that the child still has issues with his mother and often does not return the "I love you" comments from the wife and does not initiate hugs with her.

4

17) The wife also testified that the cost of the visitations was a drain upon her and she wished that cost to go away.

18) The wife offered to have the counselor do in home visits, but the counselor stated that while she could do that, the visits would be much less frequent.

19) That this court is honestly unable to tell that much has changed since the agreement.

20) The wife still seemed to disagree that she ever did anything wrong with the older child by testifying on cross that she attended counseling because "[Ho.O.] said I molested him."

21) Further, as the court was unable to hear from the child in this case, it must rely on the past record of this case as well as the statements from the counselor.

22) The court reviewed notes from the first hearings in 2011 and finds that the allegations against mother, albeit against the oldest child mostly, were extremely disturbing.

23) That the oldest child is somewhat mildly mentally disabled but the actions and events he described were clear and concise and the court noted throughout its' notes that it believed those events were true as he related.

24) That from the testimony of the counselor, [Hu.O] still has issues with hugging his mother and repeating back the statement "I love you" when wife says it.

25) That clearly then there still exists a level of discomfort between [Hu.O.] and the wife.

26) As well, without more information from the child, it is unclear whether the child would welcome these visits at the wife's home or would prefer somewhere else.

27) Without more information, and having to rely on the previous statements in court as well as the testimony of the counselor, this court cannot find that there should be a modification to the face to face visits.

Appellant's App. pp. 15-16.  Wife now appeals.[2]

**Discussion and Decision**

"In all visitation controversies, courts are required to give foremost consideration to the best interests of the child."  Marlow v. Marlow, 702 N.E.2d 733, 735 (Ind. Ct. App. 1998), trans. denied.  "Ideally, a child should have a well-founded relationship with each parent."  Appolon v. Faught, 796 N.E.2d 297, 300 (Ind. Ct. App. 2003).  Non-custodial parents' right to visit with their children is a "sacred and precious privilege."  McCauley v. McCauley, 678 N.E.2d 1290, 1292 (Ind. Ct. App. 1997), trans. denied.

We review a trial court's decision regarding a request to modify parenting time for an abuse of discretion; we give "latitude and deference" to the trial court's decision in family law matters.  Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002) (quoting In re Marriage of Richardson, 622 N.E.2d 178, 178 (Ind. 1993)) (internal quotation marks omitted); see also In re Marriage of Kraft, 868 N.E.2d 1181, 1185 (Ind. Ct. App. 2007).  We will not "substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment."  Dixon v. Dixon, 982 N.E.2d 24, 26 (Ind. Ct. App. 2013).  Furthermore, we will not "reweigh the evidence or judge the credibility of the witnesses[,]" and we will consider only the evidence most favorable to judgment and the reasonable information drawn therefrom.  Green v. Green, 843 N.E.2d 23, 26 (Ind. Ct. App. 2006).

---

[2]  We remind Mother's counsel of its professional and ethical obligation to present the Statement of Facts in accordance with the standard of review appropriate to the judgment being appealed.  Ind. Appellate Rule 46(A)(6)(b).  Mother appeals the trial court's denial of her petition to modify parenting time; therefore, the Statement of Facts should reflect the facts most favorable to the trial court's judgment.  See Schaefer v. Kumar, 804 N.E.2d 184, 195 (Ind. Ct. App. 2004), trans. denied.

Restriction of parenting time is governed by Indiana Code section 31-17-4-1(a), which provides:

> A parent not granted custody of the child is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development.

Even though the statute uses the word "might," this Court has previously interpreted the statute's language to mean that a trial court may not restrict parenting time unless that parenting time "would" endanger the child's physical health or emotional development. D.B. v. M.B.V., 913 N.E.2d 1271, 1274 (Ind. Ct. App. 2009).

Mother argues that the trial court abused its discretion in denying her petition to modify parenting time because it "made no specific finding that [Hu.O] was in any danger of experiencing physical or emotional harm with Mother." Appellant's Br. at 10. In support of her argument, Mother relies on Farrell v. Littell, 790 N.E.2d 612 (Ind. Ct. App. 2003). In Farrell, the mother alleged that the father had molested the child, and the trial court suspended the father's parenting time. In so doing, the trial court acknowledged that "the Court is left with uncertainty as to what the child has been exposed to or whether there has been any inappropriate sexual conduct with the child." Id. at 615. On appeal, a panel of this court reversed the trial court's suspension of parenting time, concluding that (1) the trial court "did not make a specific finding that [parenting time] would endanger [the child's] physical health or well-being or significantly impair [the child's] emotional development," and (2) the evidence presented "would not have permitted a finding" that parenting time by the noncustodial parent

7

"would endanger [the child's] physical health and well-being or significantly impair [the child's] emotional development." Id. at 616, 617.

Contrary to Mother's claim, Farrell is very distinguishable from the present case. In Farrell, the noncustodial parent received *no* parenting time. Here, Mother was not denied parenting time completely. Rather, the trial court ordered that her parenting time continue to be supervised, within parameters to which the parties had already agreed and which were designed to protect the best interests of Hu.O. And in Farrell, this court reversed the trial court's order not only because the trial court made no specific finding that a parenting time would endanger the child's physical health or well-being or significantly impair the child's emotional development but also, importantly for this case, because the evidence presented "would not have permitted a finding that" parenting time by the noncustodial parent would endanger the child's physical health or well-being or significantly impair the child's emotional development.

Here, although the trial court made no express finding that unsupervised parenting time, or parenting time supervised only by Hu.O.'s maternal grandmother, would be harmful to Hu.O., the evidence presented would support that conclusion. Specifically, the evidence established that Mother's mother and her sister had engaged in a physical fight at the home they shared with Mother; that Mother's sister had used illegal drugs in the home; that Mother seemed unwilling to accept the seriousness of the sexual and physical abuse allegations brought against her by her older son; that the alleged abuse of Ho.O. occurred in the home Mother shared with her mother and sister and the home in which she now seeks to exercise unsupervised parenting time with Hu.O.; and that Hu.O.

8

still sometimes exhibits discomfort Mother's presence. And, finally, although Mother contends that the trial court abused its discretion in refusing to modify the parenting time arrangement set forth in the June 2011 agreed order, her argument ignores the fact that it was this supervised parenting time arrangement to which she agreed. Because the well-being of the child is always our foremost concern, we err on the side of caution and conclude that the trial court did not abuse its discretion in failing to make a specific finding that unsupervised parenting time would endanger Hu.O.'s physical health or well-being or significantly impair his emotional development. See Duncan v. Duncan, 843 N.E.2d 966, 972 (Ind. Ct. App. 2006).

Mother next argues that the trial court abused its discretion when it considered evidence "presented prior to the entry of the 2011 Visitation Order that Mother sought to modify." Appellant's Br. at 13. Specifically, she asserts that the trial court improperly included in its order findings that Mother's oldest child had made allegations that Mother abused him; that the alleged abuse occurred at the home Mother shares with her mother and sister while Ho.O.'s maternal grandmother was inside the home; that Mother "still seemed to disagree that she ever did anything wrong with the older child"; that the court "was unable to hear from [Ho.O.] in this case, [so] it must rely on the past record of this case"; and that the trial court found Ho.O.'s "allegations against [Mother to be] extremely disturbing." Appellant's App. pp. 20-21.

We find no abuse of discretion here. The paramount concern in consideration of a parenting time modification has always been the child's best interest, and it is well within the discretion of the trial court to consider evidence that is relevant to the child's best

interest and that was entered in prior hearings in the same parenting time case. See Arms v. Arms, 803 N.E.2d 1201 (Ind. Ct. App. 2004) (holding that the trial court could consider evidence entered in prior hearings in same custody case when ruling on a motion to modify custody and parenting time; the evidence presented by the parties at earlier hearings included evidence relevant to the truthfulness of Father's allegations concerning abuse by Mother, as well as expert testimony about the impact of Mother's behavior upon the child's well-being; this evidence was relevant to instant hearing because past behavior was a valid predictor of future conduct). Under the facts and circumstances before us, we conclude that the trial court did not abuse its discretion in considering evidence presented prior to the entry of the 2011 agreed parenting time order.

Mother next argues that the trial court "abused its discretion by failing to consider the relative incomes of the parties and the ability to pay for supervised parenting time when ordering that supervised parenting time continue at Mother's expense." Appellant's Br. at 16. Mother emphasizes that her "sole source of income is disability in the amount of $1,056.00 per month, of which $400.00 is used to pay rent." Id. She further emphasizes that Father's income is roughly seven times larger than hers and that the visitation expenses of approximately $140 per month present a much larger financial burden for her than they would for Father. She argues that the trial court's refusal to reallocate the costs associated with the supervised parenting time is tantamount to an elimination of her parenting time.

We cannot agree. In June 2011, Mother agreed that she would pay for the cost of the supervised visitation, and neither her financial circumstances nor Father's have

changed significantly since she entered into that agreement. We further note that Father has borne the full responsibility for providing financial support for the children since the parties' divorce. Under these facts and circumstances, we see no abuse of discretion in requiring Mother to continue to pay the costs associated with her supervised visitation, as she agreed to do in 2011.

Finally, Mother argues that the trial court abused its discretion in "failing to make any findings regarding [Hu.O.], the child that is the subject of Mother's petition to modify parenting time." Appellant's Br. at 7. In support of her argument, Mother points to paragraph 33 of the trial court's order, which reads, "The request to modify visits with [Ho.O.] shall be denied." Appellant's App. p. 17. The order also provides, "[Ho.O.] still has issues with hugging his mother" and "there still exists a level of discomfort between [Ho.O.] and the wife." We find no reversible error here. The trial court appears to confuse Hu.O. and Ho.O.'s names in its order, but this mistake is not fatal to its judgment.

## Conclusion

For all of these reasons, we conclude that the trial court did not abuse its discretion in denying Mother's petition to modify parenting time.

Affirmed.

BRADFORD, J., and PYLE, J., concur.

11